UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRANDON RICHARDSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-464 |
| | § | |
| BRAD LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott,* 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), *cert. denied,* 527 U.S. 1041 (1999). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner,* 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that Plaintiff's Eighth Amendment claims for money damages alleging excessive force and deliberate

indifference to his serious medical needs be retained against certain named Defendants in their individual capacities only. It is respectfully recommended further that Plaintiff's claims for money damages against all Defendants in their official capacities be dismissed as barred by the Eleventh Amendment. Finally, it is respectfully recommended that Plaintiff's claims against the remaining defendants be dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.      JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.     BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID). On December 11, 1995, he was sentenced to life in prison for a capital murder conviction out of Midland County, Texas. He is currently confined at the McConnell Unit in Beeville, Texas.

Plaintiff filed his Original Complaint on November 21, 2014, and named the following fifteen (15) individuals/entities as Defendants: (1)  Brad   Livingston,  TDCJ Executive Director; (2) William Stephens, TDCJ-CID Director; (3)   Eileen     Kennedy, Region IV Director; (4) Gary Currie, McConnell Unit warden; (5) Carole Monroe, McConnell Unit assistant warden; and (6) Dr. Lannette Linthicum, Provider at the McConnell Unit (collectively, the "Supervisory Defendants"); (7) Captain Thaddeus Hunt; (8) Lieutenant Salued Salinas; (9) Sergeant Juan Trevino; (10) Sergeant Delute;

(11) Officer Alberto Valdez; and (12) Officer Dovie Bunch; (collectively the "Security Defendants"); (13) Nurse Refugia Campos; and (14) Nurse Moreno (collectively the "Medical Defendants"); and (15) the Texas Department of Criminal Justice (TDCJ).

On January 27, 2015, a *Spears*[1] hearing was conducted. The following allegations were made in Plaintiff's Original Complaint (D.E. 1), or at the hearing:

For the last seven years, Plaintiff has suffered from a strangulated hernia that is well-documented in his medical files. Indeed, between 2006 through 2007, Plaintiff received treatment for his hernia at John Sealy Hospital in Galveston, Texas, no less than twenty (20) times. He was scheduled for surgery in 2008, however, due to an infection, the surgery could not be performed, and Plaintiff was returned to the McConnell Unit.

On August 29, 2013, Plaintiff was in severe pain and collapsed on the B-side sidewalk in front of the chow hall, which is located less than fifty yards from the medical department. Sergeant Trevino called medical and Nurse Campos and Nurse Moreno responded with a gurney. The nurses ordered Plaintiff to stand up and get on the gurney, but he could not comply, and they got angry with him. Nurse Moreno bent down and applied smelling salts/ammonia under Plaintiff's nose. Plaintiff informed security staff and the nurses that he was not unconscious but was in severe pain. Nurse Moreno asked security to assist Plaintiff to his feet. Sergeant Trevino and Lieutenant Salinas literally dragged Plaintiff to the gurney that the nurses had brought. Plaintiff was in excruciating pain, but the officers were laughing at him. Plaintiff was also dizzy and nauseous from

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

the smelling salts, and he thought he was going to pass out.  The officers "roughly" assisted Plaintiff onto the stretcher.  He was then taken to medical where he laid there for ten minutes while the officers "crack[ed] jokes at my expense."

Officer Bunch was the security officer in the medical department.  Officer Bunch ordered Plaintiff to get off the stretcher.  Plaintiff replied that he was not able to do so because of the severe pain.  Nurse Campos and Nurse Moreno began yelling at Plaintiff to get up and move into a chair.  Plaintiff attempted to get off the stretcher on his own, but he collapsed to the floor.  Officer Bunch and Sergeant Delute grabbed their chemical agents and threatened to spray Plaintiff if he did not get up.

Plaintiff stayed on the ground hoping that another officer might intervene or help him because the ranking officers, Captain Hunt, Lieutenant Salinas, Sergeant Trevino, and Sergeant Delute, were all in the area and could observe what was happening.  However, Sergeant Delute ran the gurney over Plaintiff's left ankle, cutting into his flesh.  Plaintiff passed out, and the next thing he can remember is Officer Bunch kicking him in the back and side.  Plaintiff screamed for help and Nurse Moreno bent down and again administered smelling salts.  Plaintiff tried to move his head away but Nurse Moreno kept forcing the salts into his face, causing him to feel nauseous.  Plaintiff instinctively pushed her hand away, and then certain security officers "pounced" on him and proceeded to sadistically beat him as they forced his arms behind his back and placed him in restraints.  While Plaintiff was restrained faced down on his stomach, Officer Bunch dropped both knees into his back.

Thereafter, Plaintiff was placed on a stretcher and taken to 11-Building where he was placed in a solitary cell, without a hearing. The cell was extremely hot with inadequate ventilation, dirty, and it had no mat or sheet. Plaintiff fell asleep on the roach-infested floor. He was later asked to give a statement concerning a charge against him for assaulting Nurse Moreno.

At shift change, Plaintiff requested to be taken to medical. He was seen by Mrs. Hudson who ordered that Plaintiff be taken by ambulance to the Beeville Hospital for emergency surgery that same day. Plaintiff remained hospitalized for two days.

## III.   LEGAL STANDARD.

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(2). "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Id.*

## IV.   DISCUSSION.

### A.   TDCJ Not A Proper Defendant.

Plaintiff is suing the TDCJ because it allegedly employees tortfeasors.  However, § 1983 does not create a remedy against a state or state agency.  *Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 (1997).  Moreover, the Eleventh Amendment prohibits suits at law or equity against entities that are considered "arms of the State."  *See Will v. Michigan Department of State Police,* 491 U.S. 58, 70-71 (1989).  The TDCJ is an agency of the State of Texas and is immune from suit under the Eleventh Amendment.  *Harris v. Angelina County,* 31 F.3d 331, 338 (5th Cir. 1994) (citing *Ruiz v. Estelle,* 679 F.2d 1115, 1136-37 & n.75 (5th Cir. 1982) (dismissing claims against TDCJ predecessor because it was "merely an agency of the state"), *cert. denied,* 460 U.S. 1042 (1983).  Thus, Plaintiff's claims against the TDCJ can be dismissed with prejudice for failure to state a claim.

### B.   Official capacity claims.

Plaintiff is suing Defendants in their official capacities for monetary damages.

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity

is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff is suing any Defendant in his or her official capacity for money damages, those claims are barred by the Eleventh Amendment. Accordingly, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice.

### C. Claims against the Supervisory Defendants.

Plaintiff has sued Brad Livingston, William Stephens, Eileen Kennedy, Warden Currie, Assistant Warden Monroe, and dr. Linthicum alleging that, as TDCJ officials and supervisors of McConnell Unit security and medical personnel, they are responsible for the acts of their subordinates.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). For a supervisor to be liable under § 1983, the plaintiff must show

that (1) the supervisor failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the constitutional violation; and (3) the failure to train or supervise amounts to deliberate indifference to the plaintiff's constitutional rights. *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005). Establishing a supervisor's deliberate indifference generally requires a plaintiff to demonstrate "at least a pattern of similar violations." *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 427 (5th Cir. 2006) (citations omitted).

In his Original Complaint, Plaintiff merely named these officials as having supervisory roles within the prison system. He failed to allege any facts to suggest that these named Defendants did anything more than hold supervisory positions, and these claims can be dismissed.

> **D.** **Excessive force claims against Security Defendants.**

Plaintiff claims that the Security Defendants either used excessive force against him when he was neither resisting orders nor causing a disturbance, and that other officers observed this behavior and failed to intervene.

Inmates have a constitutional right to be free from the use of excessive force. *See Anthony v. Martinez,* 185 Fed. Appx. 360, 363 (5th Cir. 2006). To state an excessive force claim, a plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis* but not necessarily significant. *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 10, (1992). Thus, a prison official's

"excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." *Id.* at 4; *see also Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010) (reversing district court's dismissal of prisoner's excessive force claim based entirely on its determination that his injuries were "*de minimis*," reasoning that it was "at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury."). Additional relevant objective factors in the inquiry of the application of excessive force include (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir. 1999).

Although a *de minimis* injury is not cognizable, the extent of the injury necessary to satisfy the injury requirement "is directly related to the amount of force that is constitutionally permissible under the circumstances." *Ikerd v. Blair*, 1010 F.3d 430, 434-35 (5th Cir. 1996) (citations omitted); *see also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (noting that the minimum qualifying injury "changes with the facts of each case"); *Williams v. Bramer,* 180 F.3d 699, 704 (5th Cir. 1999) ("What constitutes an injury in an excessive force claim is ... subjective -- it is defined entirely by the context in which the injury arises.").

Here, Plaintiff testified that he collapsed in pain due to his hernia not but fifty-feet away from the medical department. Although nurses arrived with a stretcher, they spent

time ordering Plaintiff to stand up and get on the gurney by himself, when he could not do so, Sergeant Trevino and Lieutenant Salinas forcibly dragged him to the gurney and flung him on the stretcher. Once in medical, rather than begin attending to his medical needs, Officer Bunch ordered Plaintiff off the gurney, which he was unable to do unassisted. He ended up falling to the ground, where Sergeant Delute ran over his ankle with the gurney, and Officer Bunch kicked him in the sides and back. During this time, Captain Hunt was in the area and made no effort to stop the force being employed by the security officers. By shift change, Plaintiff was being escorted to the emergency room for surgery. Clearly, for purposes of § 1915A, Plaintiff has stated sufficient facts against the Security Defendants to establish that force was used maliciously and sadistically, and not in a good faith effort to maintain order and discipline. Thus, it is respectfully recommended that Plaintiff's claims against the Security Defendants in their individual capacities be retained.

### E. Deliberate indifference claims against the Medical Defendants.

Plaintiff has sued Nurse Campos and Nurse Moreno alleging that they were deliberately indifferent to his serious medical needs.

To state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303(1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints,

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). However, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

Negligent medical care does not constitute a valid § 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). *See also Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim"). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza*, 989 F.2d at 195; *Varnado*, 920 F.2d at 321. "Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Here Plaintiff alleges that Nurse Campos and Nurse Moreno provided absolutely no medical care to him when he was in obvious pain and distress. Moreover, he had a well-documented medical history concerning his hernia and his behavior was consistent

with such a diagnosis. Taking Plaintiff's allegations as true, it is difficult to imagine how either medical professional could have responded to Plaintiff in the manner alleged. Plaintiff's claims establish that the nurses were aware of a serious medical need but ignored that need, in deliberate indifference to Plaintiff's health and safety. Thus, it is respectfully that Plaintiff's claims against Nurse Campos and Nurse Moreno in their individual capacities be retained and service ordered on these Defendants.

## V. CONCLUSION.

For the reasons stated above, it is respectfully that Plaintiff's claims against the TDCJ and the supervisory Defendants be dismissed with prejudice for failure to state a claim upon which relief can be granted and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). It is respectfully recommended further that the Court retain Plaintiff's excessive force claims against Captain Hunt, Lieutenant Salinas, Sergeant Trevino, Sergeant Delute, Officer Valdez, and Officer Bunch, and that service be ordered on these Defendants in their individual capacities. Finally, it is respectfully recommended that the Court retain Plaintiff's claims against Nurse Campos and Nurse Moreno in their individual capacities and that service be ordered on these Defendants.

Respectfully submitted this 2nd day of March, 2015.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).