Case 2:14-cv-00464   Document 72   Filed in TXSD on 10/28/16   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
October 28, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRANDON RICHARDSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:14-CV-464 |
| | § | |
| BRAD LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that his rights under the Eighth Amendment to the United States Constitution were violated by multiple defendants while he was incarcerated at the McConnell Unit of the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ-CID). The motion for summary judgment under consideration (D.E. 58) concerns only one of the defendants, Refugia Campos, a licensed vocational nurse at the Unit. Responses and replies to the motion have been filed (D.E. 63, 65, 69). For the reasons stated herein, it is respectfully recommended that Defendant Campos's motion for summary judgment be denied.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is proper in this court because the actions about which plaintiff complains occurred in Bee County, Texas.

**BACKGROUND**

The following recitation of facts is taken from Plaintiff's complaint and from his testimony at the Spears hearing held on January 27, 2015.[1]  Plaintiff has suffered from a left inguinal hernia for many years.  On August 29, 2013 the hernia was causing Plaintiff severe pain and he collapsed on the sidewalk in front of the chow hall, which is located less than fifty yards from the prison infirmary.  A sergeant called for medical assistance.  Defendant Campos, a licensed vocational nurse, and Sonia Moron, a registered nurse,[2] responded with medical equipment and a gurney.  The nurses told Plaintiff to stand up, but he could not comply because he was in pain.  Nurse Moron held an ammonia inhalant under his nose, prompting Plaintiff to tell the officers and nurses that he was conscious, but he could not move because of the severe pain he was experiencing.

The correctional officers, also named as defendants by Plaintiff, assisted Plaintiff to his feet and then dragged him to the gurney.  Plaintiff was in excruciating pain and the officers laughed at him.  Plaintiff also was dizzy and nauseous from the ammonia inhalant and felt like he was going to pass out.  The officers roughly placed him on the gurney and took him to the infirmary, all while cracking jokes at his expense.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996)(stating that testimony given at a Spears hearing is incorporated into the pleadings).
[2] The second nurse was identified as Sonia Moron, but also is sometimes referred to as "Moreno" in the pleadings.  Plaintiff named her as a defendant in this lawsuit, but has been unable to serve her because she terminated her employment with TDCJ.

At the infirmary, an officer ordered Plaintiff to get off the gurney and Plaintiff replied that he could not do so because of the pain he was suffering. Defendant Campos and Nurse Moron yelled at him and told him to get up and move to a chair. Plaintiff tried to get off the gurney, but fell to the floor. The correctional officers threatened to spray Plaintiff with chemical agents if he did not get up. Plaintiff stayed on the ground, hoping that another officer in the area would see what was happening and help him.

One of the correctional officers ran the gurney over Petitioner's leg, injuring it. Plaintiff passed out and then awoke to a correctional officer kicking him in the back and side. Plaintiff screamed for help and Nurse Moron bent down and administered the ammonia inhalant. Plaintiff tried to turn his head because the odor made him nauseous, but she pushed them into his face. Plaintiff pushed the nurse's hand away and the correctional officers pounced on him and beat him as they forced his arms back and put him in restraints. While Plaintiff was restrained and lying face down on his stomach, one of the correction officers dropped both knees into Plaintiff's back.

At that point Plaintiff was placed on a stretcher and taken to a solitary cell without a hearing. The cell was extremely hot and filthy and had no bedding so Plaintiff had to lie on a roach-infested floor. A short while later he was asked to give a statement related to his alleged assault of Nurse Moron.

At the beginning of the new work shift, Plaintiff asked to be taken to the infirmary. He spent several more hours in the cell, suffering acute and intense pain, until he was taken to the infirmary. Once there, he was seen by a nurse practitioner who

examined his hernia and ordered that he be taken by ambulance to the hospital. Plaintiff had surgery to repair the hernia the same day and spent two days in the hospital.

Plaintiff was not placed in pre-hearing detention when he was returned to the McConnell Unit. Nor was he ever subjected to disciplinary proceedings regarding his alleged assault of Nurse Campos. In addition, there is no record regarding the use of force against Plaintiff while he was in the infirmary.

Plaintiff asserts that Defendant Campos was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to be free of cruel and unusual punishment. In Campos's motion for summary judgment, she argues that she is entitled to qualified immunity on Plaintiff's claims. In addition she asserts that there are no fact issues precluding a finding on summary judgment that she was not deliberately indifferent to Plaintiff's serious medical need.

## APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on

file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.*

Affidavits must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). *See also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992)(per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)(per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)(per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be

granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Milchalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazen v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

**B. Qualified Immunity**

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(en banc). To discharge this burden, a plaintiff must satisfy a two-prong test. *Atteberry,* 430 F.3d at 251-252. First he must claim that the defendant committed a constitutional violation under current law. *Id.* (citation omitted). Second, he must claim that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions about which he complained. *Id.* While it will often be appropriate

to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

### C. Eighth Amendment Violation

Prisoners are protected from cruel and unusual punishment by the Eighth Amendment. Although the Eighth Amendment does not mandate a certain level of medical care for prisoners, the Supreme Court has found that it imposes a duty on prison officials to ensure that inmates receive adequate medical care. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)(internal citations omitted).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.*, 429 U.S. at 104-05. A prison official acts with deliberate indifference if she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 842, 847 (1994). The official must both be aware of facts from which an inference of substantial risk of serious harm can be drawn and also draw the inference. *Easter*, 467 F.3d at 463. A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Id.*

Deliberate indifference is an extremely high standard to meet. A plaintiff must show that the official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for his serious medical needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(citations omitted). Although inadequate medical treatment may, at some point, rise to the level of a constitutional violation, malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)(citations omitted). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)(citations omitted). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

## DISCUSSION

Defendant Campos did not submit an affidavit regarding her involvement in the incident involving Plaintiff on August 29, 2013, but submitted an affidavit prepared by Martha Blackwell, R.N., a facility nurse manager at the McConnell Unit (Aff. of Martha Blackwell, R.N., Ex. A to Mot. for Sum. Jmt.; D.E. 58-1 at pp. 2-6). To the extent Blackwell describes facts relating to the incident, her testimony is hearsay because she was not present and it will not be considered. *Cormier*, 969 F.2d at 1561. Blackwell's affidavit will be considered for her description of the role and authority of a licensed professional nurse in TDCJ-CID.

A clinic note made at 5:08 a.m. on August 29, 2013 and signed by Nurse Moron shows that Plaintiff had fallen on the ground outside the chow hall complaining of hernia

pain (Ex. B, p. 16 to Mot. for Sum. Jmt.; D.E. 58-2 at p. 17, filed under seal). Medical and security personnel responded with medical equipment and a gurney. After use of an ammonia inhalant, Plaintiff began to get up and was placed on a gurney and transported to the medical department. When they arrived, Plaintiff was asked to get off the gurney and sit in a chair for a medical assessment, but refused. The gurney was lowered and Plaintiff rolled himself off the gurney and onto the floor. Plaintiff again was asked to get up and sit in the chair but was unresponsive. After officers applied several verbal and physical stimuli in an effort to have Plaintiff get up off the floor, Plaintiff continued to be unresponsive and an ammonia inhalant again was used. At that time Plaintiff shoved Nurse Moron on the right side of her knee. Correctional officers intervened and the medical visit was terminated (Ex. B, p. 17 to Mot. for Sum. Jmt.; D.E. 58-2 at p. 18, filed under seal).

Defendant Campos prepared and signed a pre-segregation note on August 29, 2013. The note appears to have been begun at 5:25 a.m. and finished at 5:32 a.m. (Ex. B, pp. 18-20 to Mot. for Sum. Jmt.; D.E. 58-2 at pp. 19-21, filed under seal). The note states that Plaintiff was being seen for a pre-segregation health evaluation after assaulting the charge nurse and that he was escorted to 11 Building on a stretcher. Campos noted that Plaintiff had no chronic conditions or illnesses, no lacerations, contusions or bruises, no abdominal pain or genitourinary or flank pain; that he was not dizzy and had normal speech. She described his emotional state as social and his upper and lower extremities as normal. She checked a statement that "No contraindications for placement in

segregation were identified." She also indicated that Plaintiff was not to be referred for further evaluation (Ex. B, pp. 19-20 to Mot. for Sum. Jmt.; D.E. 58-2 at pp. 20-21).

A clinic note signed by Campos the same morning at 5:56 a.m. indicates that at 5:20 a.m. Campos called Echavarry, the on-call physician's assistant, and reported that Plaintiff was complaining of a unilateral inguinal hernia that had been an ongoing problem since 2007, according to review of his chart. It was noted that Plaintiff was not wearing his scrotal support. In addition, it was noted that Plaintiff was uncooperative with the assessment (Ex. B, pp. 14-15 to Mot. for Sum. Jmt.; D.E. 58-2 at pp. 15-16, filed under seal). The note indicates that Echavarry gave orders over the telephone to medically clear Plaintiff and release him to security to be housed in 11-Building. Plaintiff was to be escorted back to the medical department when a medical provider was available for evaluation of the hernia (Ex. B, p. 15 to Mot. for Sum. Jmt.; D.E. 58-2 at p. 16). Campos's shift ended at 6:15 that same morning (Ex. D, p. 3 to Mot. for Sum. Jmt.; D.E. 58-4 at p. 4).

The pre-segregation note was signed the next day by Erick Echaverry, a Physician's Assistant and by Nurse Moron (Ex. B, p. 20 to Mot. for Sum. Jmt.; D.E. 58-2 at p. 21). Echaverry stated in an affidavit that Campos contacted him regarding her assessment of Plaintiff and he gave orders over the telephone for Plaintiff to be medically cleared, released to security and escorted to medical when a medical provider was available on the unit for evaluation of the hernia (Aff. of Erick Echaverry, Ex. B to Reply to Response to Mot. for Sum. Jmt., D.E. 66).

Additional records show that Plaintiff was returned to the clinic for follow-up approximately six hours later that same day (Ex. B, pp. 2-3 to Mot. for Sum. Jmt., D.E. 58-2 at pp. 3-4, filed under seal). He reported to the person who examined him that he had severe pain in his inguinal area and that his hernia had enlarged "this morning" and he could not get it to go back in. Plaintiff was observed to have a "[v]ery large inguinal hernia, veins bulging, extremely tender to touch, appears loops of bowel in testicles," suspected to be a strangulated inguinal hernia (*Id.*). This information was reported to a nurse practitioner, who recommended that Plaintiff be transferred by ambulance to the hospital for evaluation. Plaintiff was given IV fluids, Robaxin, and Tylenol #3 and transported to the hospital (*Id.*). He had surgery to repair the hernia the same day (Ex. B. to Mot. for Sum. Jmt., pp. 7-8; D.E. 58-2 at pp. 8-9, filed under seal).

Campos argues that based on the summary judgment evidence, she did not violate Plaintiff's constitutional rights and that even if she did, her actions were objectively reasonable. According to Nurse Blackwell, Plaintiff, as a licensed vocational nurse, was not authorized to provide a medical diagnosis or prescribe corrective measures. She could not have ordered or referred Plaintiff for hernia repair surgery or any other emergent care treatment. She made the on-call provider aware of Plaintiff's complaints of an inguinal hernia and sought orders from the provider. Campos also made the charge nurse aware of the situation and noted that the on-coming charge nurse would be made aware of the situation. Plaintiff later was returned to the medical department for evaluation of a provider in accordance with the earlier orders and subsequently referred for surgery (Blackwell Aff., Ex. A to Mot. for Sum. Jmt.; D.E. 58-1 at pp. 2-6).

When the evidence is examined in the light most favorable to Plaintiff, it reveals fact issues which preclude summary judgment on both the question of whether Campos violated Plaintiff's Eighth Amendment right and if so, whether her actions were objectively reasonable. Plaintiff asserts that after he initially fell outside the chow hall, he passed out from pain caused by the hernia and was unable to get up by himself. Notes by Nurse Moron indicate that Plaintiff was unresponsive and needed help to get up off the floor and onto the gurney. After they arrived at the medical department, Plaintiff asserts that he could not get himself off the gurney and when he tried, he fell on the floor and passed out again. Moron's notes indicate that the gurney was put in a low position and Plaintiff rolled himself off of it and onto the floor and again became unresponsive. When the ammonia stimulant was used, Plaintiff pushed Nurse Moron and security intervened. Plaintiff was taken by gurney to a solitary cell.

Despite both Plaintiff's account and Nurse Moron's notes that Plaintiff was unresponsive and could not stand up or walk without assistance because of pain caused by the hernia, none of this information is reflected in Defendant Campos's notes. When Campos completed the pre-segregation note she did not indicate that Plaintiff was having any trouble walking but checked that both his upper and lower extremities were normal. In addition, she checked that his emotional state was social, that he had normal speech, and that he was not complaining about abdominal or genitourinary pain (D.E. 58-2 at pp. 19-21). Under "Description," Campos noted "Nursing Level 1 Complete Visit and under "Diagnosis" she wrote "physical examination, pre-segregation/lock-up physical exam."

Her comments are significantly at odds with Plaintiff's and Nurse Moron's descriptions of Plaintiff that morning.

In addition, despite Campos's representation that she examined Plaintiff, the record does not show that she took his vital signs,[3] or observed his hernia at all, although he complained of pain sufficient to cause him to collapse and become non-responsive. While Campos might not have been authorized to diagnose Plaintiff or prescribe corrective measures, she was responsible for providing accurate information to the on-call provider who would make the determination about what level of care Plaintiff needed. Deliberate indifference can be manifested by prison personnel who intentionally deny or delay access to medical care. *Gamble*, 429 U.S. at 104-105. *See also Monceaux v. White*, 266 Fed. Appx. 362, 366 (5th Cir. 2008)(fact issues precluded summary judgment when evidence showed that only a doctor could order certain medical treatment or refer a prisoner for transfer to a hospital and the nurses did not notify the doctor of a prisoner's condition, in violation of a standing order at the prison) and *Easter*, 467 F.3d at 463 (nurse who knew inmate had history of heart disease was subjectively aware of a risk to his health and ignored it when he complained of chest pain and she sent him back to his cell without his prescribed nitroglycerin or any other treatment).

If a jury were presented with the evidence of Defendant Campos's notes, along with Plaintiff's testimony and Nurse Moron's notes, it could conclude that Defendant Campos ignored Plaintiff's complaints and deliberately failed to describe the severity of

---

[3] The vital signs listed on the form were taken the day before (D.E. 58-2 at p. 19, filed under seal).

Plaintiff's symptoms to the physician's assistant, resulting in Plaintiff not receiving urgent medical care he needed. Accordingly, fact issues preclude entry of summary judgment on the issue of whether Campos was deliberately indifferent to Plaintiff's serious medical need.

Even if a prison official violates an inmate's Eighth Amendment right to be free of cruel and unusual punishment, she may still be entitled to qualified immunity if her conduct was objectively reasonable in light of clearly established law. *Easter*, 467 F.3d at 465. The law is clearly established that a prison inmate can show an Eighth Amendment violation by demonstrating that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for his serious medical needs. *Domino*, 239 F.3d at 756. The record in this case shows that Defendant Campos knew that Plaintiff had twice passed out from pain from an inguinal hernia that morning, but ignored his complaints, did not examine him, and failed to notify the on-call health care provider of the serious symptoms he was suffering. No reasonable prison official could have believed the conduct was lawful given the clearly established law.

For the reasons stated above, fact issues preclude a finding that Defendant Campos is entitled to qualified immunity from Plaintiff's claims. Accordingly it is recommended that her motion for summary judgment be denied.

RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Defendant Campos's motion for summary judgment (D.E. 58) be DENIED. Plaintiff should be allowed to proceed on his 42 U.S.C. § 1983 cause of action against her.

Respectfully recommended this 28th day of October, 2016.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).