UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRANDON RICHARDSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-464 |
| | § | |
| BRAD LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this prisoner civil rights action filed pursuant to 42 U.S.C. § 1983, Plaintiff Brandon Richardson raises Eighth Amendment claims of excessive force and deliberate indifference to his serious medical needs. Presently before the Court is a Motion for Summary Judgment filed by one of the defendants, Registered Nurse (RN) Sonia Morón. (D.E. 117). For the reasons stated herein, it is respectfully recommended that RN Morón's Motion for Summary Judgment be denied.

## I. JURISDICTION.

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

## II. PROCEDURAL BACKGROUND.

Plaintiff is a prisoner in the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ-CID) and is currently confined at the McConnell Unit in Beeville, Texas. Plaintiff filed his original complaint *pro se* on November 21, 2014, alleging that on August 29, 2013, while walking in front of the McConnell Unit's chow

hall, he fell due to severe pain in his abdomen. Both medical and security personnel responded to the scene, but according to Plaintiff, they mocked him and forced him to get on a medical gurney without assistance. At the infirmary, Plaintiff claims that other officers continued to harass and physically hurt him, while supervising officers looked on and failed to intervene. He was later rushed to the local emergency room for surgery. Plaintiff sued the TDCJ and fourteen (14) individual defendants, including one medical official identified as "Nurse Sonia Moreno." (D.E. 1).

On January 27, 2015, a *Spears*[1] hearing was conducted. On March 2, 2015, the undersigned issued a Memorandum and Recommendation (March 2, 2015 M&R), recommending that the Court: (1) dismiss Plaintiff's claims for monetary damages against all defendants in their official capacities as well as the TDCJ be dismissed as barred by the Eleventh Amendment; (2) dismiss Plaintiff's claims against the supervisory defendants for failure to state a claim and/or as frivolous; (3) retain Plaintiff's claims of excessive force against the Security Defendants, identified as Captain Hunt, Lieutenant Salinas, Sergeant Trevino, Sergeant Belote, Officer Valdez, and Officer Bunch; and (4) retain Plaintiff's deliberate indifference claims against the medical defendants, Nurse Refugia Campos and "Nurse Moreno." (D.E. 8). The Court subsequently adopted the March 2, 2015 M&R. (D.E. 11).

On March 2, 2015, the undersigned ordered service of process on all eight defendants, including "Nurse Moreno." (D.E. 9). On April 17, 2015, the Office of the

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Attorney General (OAG) responded by stating its belief that Nurse Moreno's name was Sonia Morón, a former TDCJ employee. (D.E. 18, p. 2). The OAG provided RN Morón's last known address but requested that her address be sealed and not included in any service-related documents. (D.E. 18, pp. 2-3). On April 28, 2015, the undersigned granted the OAG's motion to seal, directing that RN Morón's address "shall not be made available to Plaintiff." (D.E. 24). That same day, the undersigned ordered the U.S. Marshal to attempt service on RN Morón at the address provided under seal. (D.E. 25).

On August 20, 2015, the Security Defendants filed a motion to dismiss pursuant to Rule 12(b)(6). (D.E. 33). On December 14, 2015, the undersigned recommended that the motion to dismiss be granted as to Officer Valdez because Plaintiff had failed to identify any specific facts showing how this officer was personally involved in the deprivation of Plaintiff's constitutional rights, and Plaintiff did not object to the dismissal. (D.E. 45). On January 21, 2016, the Court adopted this recommendation and dismissed Officer Valdez from this lawsuit. (D.E. 51).

On May 12, 2016, Nurse Campos filed a motion for summary judgment, contending that she was entitled to qualified immunity because: (1) she did not act with deliberate indifference to Plaintiff's serious medical needs; and (2) her actions on August 29, 2013 were objectively reasonable. (D.E. 58). On October 28, 2016, the undersigned recommended that Nurse Campos's summary judgment motion be denied as fact issues precluded a finding of entitlement to qualified immunity. (D.E. 72). On November 28, 2016, the Court adopted this recommendation. (D.E. 75).

While Plaintiff was proceeding *pro se* in this action, all attempts to locate and serve RN Moran failed. (D.E. 30, 43). On January 18, 2017, the undersigned appointed attorney Adam Milasincic to represent Plaintiff. (Doc. 76). After locating RN Morón, Mr. Milasincic arranged for a private server to serve her on April 18, 2017. On April 24, 2017, the return of service as to the summons executed on RN Morón was filed with the Court. (D.E. 86). RN Morón subsequently filed a motion to dismiss for failure to effectuate timely service. (D.E. 88). On June 12, 2017, the Court denied this motion and directed RN Morón to file an answer. (D.E. 92).

RN Moron filed her answer on July 7, 2017. (D.E. 93). On October 16, 2017, RN Morón filed a Motion for Summary Judgment, contending that she is entitled to qualified immunity with respect to Plaintiff's deliberate indifference claim against her. (D.E. 117). Thereafter, Plaintiff filed his response to the summary judgment motion. (D.E. 126).

## III.    SUMMARY JUDGMENT EVIDENCE.

RN Morón offers the following evidence in support of her summary judgment motion:

Exh. A:    Plaintiff's Relevant Medical Records (D.E. 117-1, pp. 1-14).

Exh. B:    Expert Report of Martha Tijerina, RN  (D.E. 117-1, pp. 15-19).

Exh. C:    Plaintiff's Deposition (D.E. 117-1, pp. 20-24).

Plaintiff, in turn, has submitted the following summary judgment evidence in response:

Exh. 1:    RN Morón's Deposition (D.E. 126-1, pp. 1-30).

Exh. 2:       Plaintiff's Deposition (D.E. 126-2, pp. 1-50).

Exh. 3:       Infirmary Photo (D.E. 126-3).

Exh. 4:       *Spears* Hearing Transcript (D.E. 126-4, pp. 1-41),

Exh. 5 :      James Thompson (Expert) Deposition (D.E. 126-5, pp. 1-2).

The competent summary judgment evidence presented by the parties establishes the following. Plaintiff has suffered from a left inguinal hernia for years. (D.E. 117-1, p. 16; D.E. 126-4, p. 3). On August 29, 2013, around 5:00 a.m., Plaintiff's hernia was causing him severe pain, and he collapsed on the sidewalk in front of the chow hall which is located "probably 15 yards from the infirmary." (D.E. 117-1, p. 7; D.E. 126-4, p. 5).

RN Morón was the charge nurse on duty in the McConnell Unit's medical department at the time of her contact with Plaintiff on August 29, 2013. (D.E. 126-1 at depo. p. 29). As of that date, she had over five years of experience in prison healthcare settings. (D.E. 126-1 at depo. p. 12). RN Morón was generally responsible for overseeing the infirmary and supervising three nurses and two medication aides working the night shift on August 29, 2013. (D.E. 126-1 at depo. pp. 19, 25). RN Morón was Nurse Campos's supervisor during that night shift.

Toward the end of her night shift, RN Morón learned that an inmate was in need of medical assistance outside the chow hall. (D.E. 126-1 at depo. p. 35). When Nurse Campos and RN Morón arrived at the chow hall, RN Morón observed Plaintiff lying on the ground. (D.E. 126-1 at depo. pp. 37-38). Plaintiff testified that he was awake and informed RN Morón that his hernia had fallen into his scrotum and he could not get on the gurney because of the pain. (D.E. 126-2 at depo. p. 88). RN Morón acknowledged

that Plaintiff was complaining at this time about hernia pain. (D.E. 126-1 at depo. p. 38). RN Morón testified that Plaintiff was unresponsive to both her verbal commands to get onto the gurney and physical attempt to wake him by shaking his chest. (D.E. 126-1 at depo. pp. 39-40). RN Morón applied an ammonia inhalant (smelling salts) under Plaintiff's nose. (D.E. 126-1 at depo. p. 40; D.E. 126-2 at depo. pp. 88-89).

After receiving assistance to be placed on the gurney, Plaintiff was brought to the triage area of the medical unit. (D.E. 126-1 at depo. p. 45; D.E. 126-2 at depo. 89). Once Plaintiff, Nurse Campos, and RN Morón arrived in triage area, RN Morón directed Plaintiff to get off the gurney and sit on a chair for a medical assessment. (D.E. 126-1 at depo. p. 46; D.E. 126-2 at depo. p. 89). Plaintiff did not get off the gurney, stating that he was in pain. (D.E. 126-2 at depo. p. 89). Plaintiff testified that he refused to get off the gurney over a ten-minute period due to his pain and inability to walk. (D.E. 126-2 at depo. p. 89). RN Morón testified, however, that Plaintiff did not make any noise while strapped to the gurney. (D.E. 126-1 at depo. p. 45). Officers then proceeded to lower the gurney to about three feet off the ground, forcing Plaintiff to roll off of the gurney onto the floor. (D.E. 126-2 at depo. pp. 89, 100-01). The triage area is not large, and the vital sign machines are located near to where Plaintiff rolled onto the floor. (D.E. 126-1 at depo. p. 62; D.E. 126-3).

According to Plaintiff, Sergeant Belote rolled the gurney over Plaintiff's left ankle. (D.E. 126-2 at depo. pp. 89, 102). Plaintiff testified that: (1) Sergeant Belote, Officer Bunch, and RN Morón repeatedly instructed Plaintiff to get off the floor into the chair; (2) Plaintiff was unable to comply with their commands and stand up due to his

pain; and (3) Sergeant Belote threatened to gas Plaintiff if he did not get off the floor into the chair. (D.E. 126-2 at depo. pp. 89-90). Plaintiff further testified that, during his entire time in medical, the security officers were making jokes, calling Plaintiff a baby, laughing at him, making light of the situation, and treating Plaintiff as if he were faking his pain. (D.E. 126-4 at pp. 23-24).

A clinic note prepared and signed by RN Morón on August 29, 2013 at 5:36 a.m. indicates that Plaintiff was merely being "unresponsive" to her verbal requests to move into the chair. (D.E. 117-1, p. 8). Thus, RN Morón applied the ammonia inhalant on Plaintiff for the second time. (D.E. 117-1, p. 8; D.E. 126-2 at depo. p. 90). Plaintiff testified that he instinctively reacted to the inhalant by pushing RN Morón's hand away from him in order to distance himself from the chemical burn and the pain it induced. (D.E. 126-2 at depo. pp. 90, 147-48). RN Morón's clinic note, signed on August 29, 2013 at 5:36 a.m., reflects instead that Plaintiff shoved RN Morón "to the right lateral side of knee." (D.E. 117-1, p. 8). RN Morón testified that, in her experience, patients typically would move and try to "pull away" after one application of an ammonia inhalant. (D.E. 126-1 at depo. pp. 55-56).

Due to Plaintiff's aggressive behavior, TDCJ security officers intervened to restrain Plaintiff. (D.E. 117-1, p. 8; D.E. 126-2, p. 148). RN Morón testified that she terminated her visit with Plaintiff after she was pushed away by Plaintiff following the second application of the ammonia inhalant. (D.E. 126-1 at depo. p. 52). RN Morón did not provide Plaintiff with any additional medical care or otherwise complete her evaluation of Plaintiff after he was restrained. (D.E. 126-1 at depo. p. 83). Plaintiff

testified that he was taken to a solitary cell and left there for hours until another officer observed him in the cell and alerted other officers to return Plaintiff back to medical. (D.E. 126-2 at depo. pp. 91, 108). Plaintiff further explained that his pain level peaked once he left the infirmary to the solitary cell and stayed at a peak level until he received pain medication around the time of his surgery later that day. (D.E. 126-2 at depo. pp. 120-21).

A clinic note signed by Nurse Campos and RN Morón (as well as one other nurse) on August 29, 2013, at 5:56 a.m. indicates that at 5:20 a.m. Nurse Campos called E. Echavarry, the on-call physician's assistant (PA), and reported that Plaintiff was complaining of a unilateral inguinal hernia. (D.E. 117-1, p. 10). It was noted that Plaintiff was not wearing his scrotal support and that Plaintiff was uncooperative with the provider's assessment. (D.E. 117-1, p. 10). The note further indicated that PA Echavarry gave orders over the telephone to: (1) medically clear Plaintiff and release him to security to be housed in 11-Building; and (2) have Plaintiff escorted back to the medical department when a medical provider became available to evaluate the hernia. (D.E. 117-1, p. 10). Lastly, the clinic note reflected that both RN Morón and the on-coming charge nurse for the day shift were notified of the provider's orders. (D.E. 117-1, p. 10).

Nurse Campos and RN Morón completed their shifts at 6:15 a.m. on August 29, 2013, and turned over medical care duties to the day-shift staff. (D.E. 117-1, p. 14). At the end of their shift, RN Morón informed the charge nurse of the day shift what had happened with Plaintiff and the orders from the on-call provider. (D.E. 126-1, p. 88).

RN Morón, however, did not personally discuss the situation involving Plaintiff with the on-call provider. (D.E. 126-1 at depo. pp. 83-84).

Several hours later, around 11:27 a.m. on August 29, 2013, Plaintiff was seen by Nurse Practitioner (NP) Lori Hudson. (D.E. 117-1, pp. 11-12). NP Hudson noted Plaintiff had a very large left inguinal hernia that was extremely tender. (D.E. 117-1, p. 11). NP Hudson suspected Plaintiff was suffering from a strangulated inguinal hernia. (D.E. 117-1, p. 11). Because Plaintiff would not be able to receive general surgery for two weeks, NP Hudson recommended Plaintiff to be transferred to the local emergency room at Christus Spohn Hospital. (D.E. 117-1, p. 11). Later that day, Plaintiff received successful surgery at the hospital to repair his cantaloupe-sized strangulated left inguinal scrotal hernia. (D.E. 117-1, p. 13; D.E. 126-2 at depo. p. 116). According to Plaintiff, the hernia at the time of surgery was visible outside of Plaintiff's clothes. (D.E. 126-2 at depo. p. 116).

## IV. SUMMARY JUDGMENT STANDARD.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on

file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be

granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

## V.   DISCUSSION.

RN Morón moves for summary judgment as to Plaintiff's deliberate indifference claim against her on the basis she is entitled to qualified immunity. (D.E. 117). The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, the plaintiff must satisfy a two-prong test." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005). First, he must claim that the defendants committed a

constitutional violation under current law. *Id.* (citation omitted). Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Id.* While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

### *Step 1 – Constitutional Violation*

Prisoners are protected from cruel and unusual punishment by the Eighth Amendment. While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05. A prison official acts with deliberate indifference if she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. 825, 847 (1994). The official must both be aware of facts from which an inference of

substantial risk of serious harm can be drawn and also draw the inference. *Easter*, 467 F.3d at 463. A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Id.*

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A plaintiff must show that the official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for his serious medical needs. *Id.* (citation omitted). Although inadequate medical treatment may, at some point, rise to the level of a constitutional violation, malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (citations omitted). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

RN Morón asserts that she did not violate Plaintiff's Eighth Amendment rights, contending that she was not subjectively aware of a substantial risk of serious harm to Plaintiff, that she did not act in a way to unconstitutionally delay Plaintiff's medical care, and that her actions, even if they delayed his medical care, resulted in no substantial harm. (D.E. 117, pp. 5-10). Plaintiff responds that RN Morón violated her Eighth Amendment rights in that: (1) she was subjectively aware of a substantial risk of serious harm to Plaintiff; (2) she caused an unconstitutional delay in Plaintiff's medical care; and

(3) Plaintiff suffered substantial harm due to Defendant Morón's actions. (D.E. 126, pp. 5-10).

When the evidence is examined in a light most favorable to Plaintiff, the undersigned finds that factual issues exist to preclude summary judgment as to whether RN Morón acted with deliberate indifference to Plaintiff's serious medical needs. The competent summary judgment evidence reflects that RN Morón was well aware that Plaintiff was suffering from pain due to a hernia condition when she first encountered Plaintiff near the chow hall around 5:00 a.m. o August 29, 2013. (D.E. 126-1 at depo. p. 38; D.E. 126-2 at depo. p. 88). While there are factual discrepancies as to Plaintiff's responsiveness to RN Morón's commands, it is undisputed that she perceived Plaintiff's condition as serious enough to warrant the application of an ammonia inhalant under Plaintiff's nose. (D.E. 126-1 at depo. p. 40; D.E. 126-2 at depo. pp. 88-89).

The competent summary judgment evidence further demonstrates that Plaintiff was unable to get off the gurney due to hernia pain when he arrived at the medical triage area. (D.E. 126-1 at depo. p. 46; D.E. 126-2 at depo. p. 89). Rather than take any immediate action to treat Plaintiff for his considerable pain, which Plaintiff made known to the individuals in the triage room, or direct officers to assist Plaintiff to the vital signs machines, RN Morón watched as: (1) Plaintiff was rolled off the gurney and allowed to fall three feet to the floor; (2) an officer rolled the gurney over Plaintiff's ankle; and (3) several officers made fun of and threatened Plaintiff. (D.E. 126-2 at depo. pp. 89, 100-02; D.E. 126-4 at pp. 23-24).

The undisputed evidence reflects that RN Morón applied ammonia inhalant to Plaintiff a second time after he was unresponsive to her commands while lying on the floor. (D.E. 117-1, p. 8; D.E. 126-2 at depo. p. 90). Plaintiff then reacted to the application of the ammonia inhalant by either pushing or shoving RN Morón away in some physical manner. (D.E. D.E. 117-1, p. 8; D.E. 126-2 at depo. pp. 90, 147-48).

After officers intervened to restrained Plaintiff, RN Morón's own testimony reflects that she unilaterally terminated her visit with Plaintiff and did not provide Plaintiff with any additional medical care. (D.E. 126-1 at depo. pp. 52, 83). The competent summary judgment evidence indicates that RN Morón terminated her treatment of Plaintiff despite having knowing that: (1) inguinal hernias, left untreated, could present an emergency; and (2) patients often react to the application of an ammonia inhalant by pulling away. (D.E. 126-1, pp. 55-56, 94-95). A jury presented with this testimony, along with the medical records and Plaintiff's testimony, could find that RN Morón was aware of a substantial risk of serious harm to Plaintiff if not treated immediately but failed to take reasonable steps to provide necessary treatment.

Furthermore, fact issues exist as to whether Defendant Morón's conduct caused an unconstitutional delay in Plaintiff's medical care resulting in substantial harm. Delays in medical care are actionable as an Eighth Amendment violation to the extent that the delay constitutes deliberate indifference and results in substantial harm. *See Easter*, 467 F.3d at 464 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Deliberate indifference can be manifested by prison personnel who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 104-05.

In this case, the competent summary judgment evidence presented reflects that, after Plaintiff was removed to segregation following his physical encounter with RN Morón, Nurse Campos called the on-call provider, PA Echavarry, to report Plaintiff's complaints of a unilateral inguinal hernia. (D.E. 117-1, p. 10). The Court has previously denied Nurse Campos's summary judgment motion, finding that factual issues existed as to whether Nurse Campos acted with deliberate indifference to Plaintiff's serious medical needs. (D.E. 72, 75). The Court found that Nurse Campos's pre-segregation note prepared on the morning of August 29, 2013, provided the following: (1) Plaintiff was seen for a pre-segregation health evaluation after his physical encounter with RN Morón; (2) Plaintiff had no chronic conditions or illnesses, no lacerations, contusions or bruises, no abdominal pain or genitourinary or flank pain; that he was not dizzy and had normal speech; (3) Plaintiff's emotional state was social and his upper and lower extremities were normal; and (4) there were no contraindications for placement in segregation. (D.E. 72, p. 9). The Court concluded that Nurse Campos's pre-segregation note was "significantly at odds with Plaintiff's and RN's Morón's description of Plaintiff that morning." (D.E. 72, p. 2).

No evidence has been presented to indicate that RN Morón, as the charge nurse on the morning in question, revised any of the statements in Nurse Campos's pre-segregation note to correspond with her observations of Plaintiff as complaining of serious hernia pain and being non-responsive in some instances. Court records instead reflect that RN Morón signed off on the pre-segregation note prepared by Defendant Campos. (D.E. 58-2, p. 21). The competent summary judgment evidence further

indicates that RN Morón never personally notified the on-call provider to provide him with information as to Plaintiff's condition. Rather, as noted above, RN Morón terminated her visit with Plaintiff after he had pushed her away and then had no additional role in Plaintiff's medical care. Plaintiff was not seen by a health care provider for nearly six hours after RN Morón terminated her visit in the triage area of the infirmary. Plaintiff testified that his pain level peaked once he left the infirmary to the solitary cell and stayed at a peak level until he received pain medication later that day. (D.E. 126-2 at depo. pp. 120-21).

Based on the evidence presented before the Court, a jury could find that RN Morón effectively ignored Plaintiff's complaints of severe hernia pain and overall medical condition to the extent that her conduct resulted in both an unconstitutional delay in his medical care as well as substantial harm to him. *See Coleman v. Sweetin*, 745 F.3d 756, 766 (5th Cir. 2014) (concluding that prisoner had stated a deliberate indifference claim based on delay in treatment where he had alleged substantial harm due to defendant's refusal either to answer his "sick-call request slips" or provide pain medication even when he was in great pain); *Easter*, 467 F.3d at 463 (concluding that the nurse who knew inmate had a history of heart disease was subjectively aware of a risk to his health and ignored it when he complained of chest pain and she sent him back to his cell without his prescribed nitroglycerin or any other treatment). Accordingly, for purposes of the qualified immunity analysis, RN Morón is not entitled to summary judgment on the issue of whether Plaintiff has established an Eighth Amendment claim of deliberate indifference against her.

### *Step 2 – Objective reasonableness*

The issue for consideration with respect to the second step of the qualified immunity analysis is whether RN Morón's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Short v. West*, 662 F.3d 320, 325 (5th Cir. 2011) (citations omitted). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citations omitted).

As discussed above, the law in the Fifth Circuit is clearly established that a prison inmate can show an Eighth Amendment violation by demonstrating that a prison medical official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for his serious medical needs. *Domino*, 239 F.3d at 756. Based on the competent summary judgment evidence presented, fact issues exist as to whether RN Morón's conduct in connection with her treatment of Plaintiff on August 29, 2013 was objectively reasonable.

Accordingly, it is respectfully recommended that RN Morón is not entitled to qualified immunity and that her summary judgment motion be denied as to Plaintiff's deliberate indifference claim against her.

## VI. RECOMMENDATION.

For the foregoing reasons, it is respectfully recommended that Defendant Sonia Morón's Motion for Summary Judgment (D.E. 117) be DENIED. Plaintiff should be allowed to proceed to trial on his deliberate indifference claim against this defendant.

Respectfully submitted this 30th day of November, 2017.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).